Anoush Hakimi (State Bar No. 228858)
*anoush@handslawgroup.com*
Peter Shahriari (State Bar No. 237074)
*peter@handslawgroup.com*
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
7080 Hollywood Blvd., Suite 804
Los Angeles, California 90028
Telephone: (323) 672 – 8281
Facsimile: (213) 402 – 2170

Attorneys for Plaintiffs
Amber Machowski et al.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **AMBER MACHOWSKI**, WILLIAM BERRY, RUBEN BOBADILLA, ANTHONY SMITH, YALDA SAFFIEH SHARIATI, each individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>**BIRD RIDES, INC.,** a Delaware corporation; NEUTRON HOLDINGS, INC., a Delaware corporation; CULVER CITY, a public entity CITY OF LONG BEACH, a public entity; CITY OF RIVERSIDE, a public entity; CITY OF ANAHEIM, a public entity; CITY OF SANTA ANA, a public entity; CITY OF IRVINE, a public entity; CITY OF GARDEN GROVE, a public entity; and DOES 1-10,<br><br>        Defendants. | Case No.:<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR:<br><br>1. 42 U.S.C. § 12101 *et seq.* [The Americans with Disabilities Act]<br>2. 29 U.S.C. § 794 *et seq.* [Section 504 of the Rehabilitation Act]<br>3. California Government Code § 4450 *et seq.*<br>4. California Government Code § 11135 *et seq.*<br>5. California Civil Code § 54 *et seq.*<br>6. Public Nuisance<br>7. Trespass<br>8. California Business and Professions Code § 17200 *et seq.*<br><br><u>DEMAND FOR JURY TRIAL</u> |

Named Plaintiffs Amber Machowski, William Berry, Ruben Bobadillo, Anthony Smith and Yalda Safieh Shariati (each a "Named Plaintiff", and collectively, the "Named Plaintiffs"), for themselves and on behalf of all others similarly situated (the "Proposed Class") complain of Bird Rides, Inc., a Delaware corporation ("Bird Co."), Neutron Holdings, Inc., a Delaware corporation doing business as Lime-S ("Lime Co.", together with Bird Co., collectively, the "Electric Scooter Defendants"), Culver City, a public entity ("Culver City"), City of Long Beach, a public entity ("Long Beach City"), City of Riverside, a public entity ("Riverside City"), City of Anaheim, a public entity ("Anaheim City"), City of Santa Ana, a public entity ("Santa Ana City"), City of Irvine, a public entity ("Irvine City"), City of Garden Grove, a public entity ("Garden Grove City," together with Culver City, Long Beach City, Riverside City, Anaheim City, Santa Ana City, and Irvine City, collectively, the "City Defendants"), and Does 1-10  and alleges as follows:

## I.  PARTIES

1.     Named Plaintiff Amber Machowski is a resident of Anaheim. She is a paraplegic. She is unable to walk or stand and relies on a wheelchair for mobility. Named Plaintiff Amber Machowski is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12102(A), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B), California Government Code § 12926, the California Unruh Civil Rights Act (Cal. Civ. Code §§51 and 52 et seq.), and other statutory laws which protect the rights of "disabled persons". She cannot walk, stand or move heavy or awkward objects. She has been issued a Disabled Person Parking Placard by the State of California and uses a specially equipped car.

2.     Named Plaintiff William Berry is a resident of Los Angeles. He is missing all of the toes on his feet. He has balance issues when he walks or stands, and cannot move heavy or awkward objects without risking injury to himself. Named Plaintiff William Berry is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12102(A), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B), California Government Code § 12926, the California Unruh Civil Rights Act (Cal. Civ. Code §§51 and 52 et seq.), and other statutory laws which protect the rights of "disabled persons".

3.     Named Plaintiff Ruben Bobadillo is a resident of Los Angeles. He has chronic back pain as a result of inflammation of his L4 and L5 vertebrae. He has lower body weakness, he has difficulty maneuvering his body quickly, he has difficulty walking, he cannot run, he cannot stand for lengthy periods of time, and he cannot move heavy or awkward objects. Named Plaintiff Ruben Bobadillo is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12102(A), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B), California Government Code § 12926, the California Unruh Civil Rights Act (Cal. Civ. Code §§51 and 52 et seq.), and other statutory laws which protect the rights of "disabled persons". He has been issued a Disabled Person Parking Placard by the State of California.

4.     Named Plaintiff Anthony Smith is a resident of Los Angeles. He is a single-leg amputee, and is unable to walk or stand and relies on a wheelchair for mobility. He cannot move heavy or awkward objects. Named Plaintiff Anthony Smith is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12102(A), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B),

California Government Code § 12926, the California Unruh Civil Rights Act (Cal. Civ. Code §§51 and 52 et seq.), and other statutory laws which protect the rights of "disabled persons". He has been issued a Disabled Person Parking Placard by the State of California.

5.      Named Plaintiff Yalda Saffieh Shariati is a resident of Mission Viejo. She has no ligaments in her left knee, lower body weakness, difficulty maneuvering her body quickly, difficulty walking, cannot run, cannot stand for lengthy periods of time, and cannot move heavy or awkward objects. Named Plaintiff Yalda Saffieh Shariati is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12102(A), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B), California Government Code § 12926, the California Unruh Civil Rights Act (Cal. Civ. Code §§51 and 52 et seq.), and other statutory laws which protect the rights of "disabled persons". She has been issued a Disabled Person Parking Placard by the State of California.

6.      The Proposed Class consists of all persons with mobility impairment or visual impairment or other disabilities who have been denied equal access to Pedestrian Rights of Way (as defined herein below) as a result of the Defendants' policies and practices with regard to the Pedestrian Rights of Way and disability access.

7.      Hereafter, references to Plaintiffs shall be deemed to include Named Plaintiffs and each member of the Proposed Class, unless otherwise indicated.

8.      Defendant Bird Co. is a for-profit corporation which rents Bird Scooters (as defined below) to Bird Customers (as defined below) through the Bird App (as defined below). Bird Co. is a Delaware corporation, with its principal office located at 406 Broadway #369, Santa Monica, California 90401.

9. Defendant Lime Co. is a for-profit corporation which rents Lime Scooters (defined below) to Lime Customers (defined below) through the Lime App (defined below). Lime Co. is a Delaware corporation, with its principal office located at 66 Bovet Rd, Suite 320 San Mateo, California 94402.

10. Defendant Culver City has been a public entity within the meaning of Title II of the Americans with Disabilities Act (the "ADA) and has received federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. §794, et seq. (the "Rehabilitation Act"), and state financial assistance within the meaning of Government Code 11135. Defendant Culver City has received federal and state financial assistance sufficient to invoke the coverage of Section 504 of the Rehabilitation Act and California Government Code Section 11135.

11. Defendant Culver City is a local government entity with the responsibility of providing Plaintiffs access to its public facilities, programs, services and activities. Defendant Culver City is responsible for maintaining and regulating the system of Pedestrian Rights of Way within the boundaries of Culver City.

12. Defendant Long Beach City has been a public entity within the meaning of Title II of the ADA and has received federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, and state financial assistance within the meaning of Government Code 11135. Defendant Long Beach City has received federal and state financial assistance sufficient to invoke the coverage of Section 504 of the Rehabilitation Act and California Government Code Section 11135.

13. Defendant Long Beach City is a local government entity with the responsibility of providing Plaintiffs access to its public facilities, programs, services and activities. Defendant

Los Angeles City is responsible for maintaining and regulating the system of Pedestrian Rights of Way within the City of Long Beach.

14.     Defendant Riverside City has been a public entity within the meaning of Title II of the ADA and has received federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, and state financial assistance within the meaning of Government Code 11135. Defendant Riverside City has received federal and state financial assistance sufficient to invoke the coverage of Section 504 of the Rehabilitation Act and California Government Code Section 11135.

15.     Defendant Riverside City is a local government entity with the responsibility of providing Plaintiffs access to its public facilities, programs, services and activities. Defendant Riverside City is responsible for maintaining and regulating the system of Pedestrian Rights of Way within the City of Riverside.

16.     Defendant Anaheim City has been a public entity within the meaning of Title II of the ADA and has received federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, and state financial assistance within the meaning of Government Code 11135. Defendant Anaheim City has received federal and state financial assistance sufficient to invoke the coverage of Section 504 of the Rehabilitation Act and California Government Code Section 11135.

17.     Defendant Anaheim City is a local government entity with the responsibility of providing Plaintiffs access to its public facilities, programs, services and activities. Defendant Anaheim City is responsible for maintaining and regulating the system of Pedestrian Rights of Way within the City of Anaheim.

18.     Defendant Santa Ana City has been a public entity within the meaning of Title II of the ADA and has received federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, and state financial assistance within the meaning of Government Code 11135. Defendant Santa Ana City has received federal and state financial assistance sufficient to invoke the coverage of Section 504 of the Rehabilitation Act and California Government Code Section 11135.

19.     Defendant Santa Ana City is a local government entity with the responsibility of providing Plaintiffs access to its public facilities, programs, services and activities. Defendant Riverside City is responsible for maintaining and regulating the system of Pedestrian Rights of Way within the City of Santa Ana.

20.     Defendant Irvine City has been a public entity within the meaning of Title II of the ADA and has received federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, and state financial assistance within the meaning of Government Code 11135. Defendant Irvine City has received federal and state financial assistance sufficient to invoke the coverage of Section 504 of the Rehabilitation Act and California Government Code Section 11135.

21.     Defendant Irvine City is a local government entity with the responsibility of providing Plaintiffs access to its public facilities, programs, services and activities. Defendant Irvine City is responsible for maintaining and regulating the system of Pedestrian Rights of Way within the City of Irvine.

22.     Defendant Garden Grove City has been a public entity within the meaning of Title II of the ADA and has received federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, and state financial assistance within the meaning of Government Code

11135. Defendant Garden Grove City has received federal and state financial assistance sufficient to invoke the coverage of Section 504 of the Rehabilitation Act and California Government Code Section 11135.

23.      Defendant Garden Grove City is a local government entity with the responsibility of providing Plaintiffs access to its public facilities, programs, services and activities. Defendant Garden Grove City is responsible for maintaining and regulating the system of Pedestrian Rights of Way within the City of Garden Grove.

24.      The true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, are presently unknown to Named Plaintiff who therefore sues these Defendants by fictitious names. Plaintiffs will amend this Complaint to show their true names and capacities when they have been ascertained. Each of the Doe Defendants is responsible in some manner for the conduct alleged herein.

## II.  JURISDICTION AND VENUE

25.      The first two claims alleged herein arise under the Americans with Disabilities Act (42 U.S.C. §§ 12131 et seq.), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794 et seq.), such that the jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Through the same actions and omissions that form the basis of Plaintiffs' federal claims, Defendants have also violated Plaintiffs' rights under state law, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. This Court has jurisdiction over Plaintiffs' claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

26.      This Court also has subject matter jurisdiction over this proposed class action under the Class Action Fairness Act of 2005 (28 U.S.C. § 1332(d)(2)), because (a) this is a class

action, including claims asserted on behalf of more than one hundred (100) potential class members, (b) on information and belief, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and cost, and (c) Bird Co. and Lime Co. are citizens of the State of Delaware, whereas, Named Plaintiffs and likely many more of the Proposed Class are citizens of the State of California.

27.   Venue over Plaintiffs' claims is proper in the Central District of California because the City Defendants reside in the Central District of California within the meaning of 28 U.S.C. § 1391, and because the events, acts, and omissions giving rise to Plaintiffs' claims occurred in the Central District of California.

## III.   FACTUAL ALLEGATIONS

28.   This action arises by reason of a deliberate and systematic exploitation of the curb ramps, sidewalks, crosswalks, pedestrian crossings and other walkways (hereafter "Pedestrian Rights of Way") within the Cities of Culver City, Long Beach, Anaheim, Santa Ana, Irvine, Garden Grove and Orange (hereafter, collectively, the "Cities") by the Electric Scooter Defendants for their own corporate profit to the harm of some of the most vulnerable residents of the Cities, the disabled.

29.   The business model of the Electric Scooter Defendants is based on the unauthorized and illegal, private use of public property (i.e. Pedestrian Rights of Way) for their own business use.

30.   Bird Co. rents electric scooters ("Bird Scooters") to its customers ("Bird Customers") through a mobile application (the "Bird App").  Lime Co. rents electric scooters ("Lime Scooters", together with Bird Scooters, hereinafter, collectively, "Electric Scooters") to its customers ("Lime Customers", together with Bird Customers, hereinafter, collectively,

"Electric Scooter Customers") through a mobile application (the "Lime App", together with the Bird App, hereinafter, collectively, "Electric Scooter Apps").

31.     Electric Scooters cause barriers in paths of travel when they are physically left on the ground. When Electric Scooter Customers they use the Electric Scooter Apps to locate the Electric Scooters. The Electric Scooter Apps find Electric Scooters which are abandoned wherever they can be left by the previous Electric Scooter Customer. These Electric Scooters are abandoned all across the Cities, on public property, and typically in designated Pedestrian Rights of Way.

32.     Electric Scooter Customers then drive Electric Scooters at speeds much faster than the speed of foot traffic, speeds often exceeding fifteen (15) miles per hour on and through Pedestrian Rights of Way.

33.     Once an Electric Scooter Customer has completed their ride they then simply abandon the Electric Scooter near their destination, typically on public property in a Pedestrian Right of Way. The Electric Scooters are sometimes parked upright. They are also left laying on their side, blocking paths of travel along the length of the scooter. Multiple Electric Scooters are also frequently abandoned together in groups.

34.     Independent contractors are engaged by the Electric Scooter Defendants to locate (through the Electric Scooter Apps) Electric Scooters with depleted batteries or other maintenance needs which have been abandoned in Pedestrian Rights of Way across the Cities. These independent contractors, then recharge the batteries of the Electric Scooters and without supervision or any oversight whatsoever distribute Electric Scooters back on the Pedestrian Rights of Way for further use by Electric Scooter Customers. These personnel are not employees of the Electric Scooter Defendants, but rather independent contractors.

35.     Electric Scooters cause barriers in paths of travel when they are operated. Electric Scooters are operated on Pedestrians Rights of Way. The Electric Scooters are wheeled and motor powered, propelling them at speeds around fifteen (15) miles per hour. Operators of the Electric Scooters are not required by Defendants to have any training. The combination of high relative speeds, compared to pedestrians, and lack of restrictions regarding the operator, creates hazardous conditions which causes Named Plaintiffs, and likely others in the Proposed Class difficulty, humiliation and frustration. Named Plaintiffs do not want to be hit or run over by one of the Electric Scooters.

36.     Electric Scooter Defendants also deter Plaintiffs from using the Pedestrian Rights of Way. The abandoned Electric Scooters are barriers blocking their way. The moving Electric Scooters also deny them equal access. As a result of the humiliation, difficulty and frustration of these Electric Scooters, Plaintiffs are discouraged from using Pedestrian Rights of Way.

37.     The Electric Scooter Defendants mistakenly determined that they have figured out a solution (albeit illegal) to the costly problem of having retail locations where their Electric Scooters may be rented across the Cities or negotiating leases for docking stations throughout the Cities: to annex and misappropriate public property for their own corporate profit. Pedestrian Rights of Way, which are public property for the use and enjoyment of all of the public, have been converted by the Electric Scooter Defendants into their own private showroom, parking lot, service garage, testing ground and electric scooter highway.

38.     The Electric Scooter Defendants' unlawful misappropriation of public property for their own corporate profit have made Bird Co. and Lime Co. multibillion-dollar corporations, demonstrating to the world that illegal conduct does in fact pay. Rather than seek permission through proper channels, the Electric Scooter Defendants (much like many upstart "disruptive"

businesses) break the law, then ask for forgiveness after millions of people have been denied access to public accommodations or worse yet, injured by their unlawful conduct.

39.     The Electric Scooter Defendants' meteoric rise, through exploitation of public property for corporate profit, comes at the injury, suffering, discomfort, discrimination, humiliation, anxiety, severe detriment and prejudice of the rights of the tens of thousands of disabled persons with mobility and/or visual impairments and other disabilities who are residents and visitors of the Cities.

40.     In reaping the windfall benefits of the Electric Scooter Defendants' unlawful business model, Electric Scooter Customers unlawfully drive their Electric Scooters in Pedestrian Rights of Way and then abandon the Electric Scooters in Pedestrian Rights of Way creating barriers to residents and visitors of the Cities with disabilities.

41.     The City Defendants are responsible for maintaining the Pedestrian Rights of Way, which constitute an essential government program, service, and activity for residents and visitors of the Cities.

42.     The City Defendants are responsible for providing public transportation for the residents and visitors to the Cities, which constitute an essential government program, service and activity for residents and visitors of the Cities.

43.     The City Defendants have failed to provide adequate public transportation giving rise to unlawful private "solutions" like the Electric Scooter Defendants which exploit public property for corporate profit to the widespread detriment of disabled residents and visitors of the Cities.

44.     The City Defendants have further failed to adopt, implement or enforce ordinances or other requirements necessary to ensure that the Pedestrian Rights of Way are kept

free of the Electric Scooter obstructions which have plagued the Pedestrian Rights of Way, resulting in barriers to access.

45.     The Electric Scooter Defendants and the City Defendants have a mutually beneficial, symbiotic relationship. The Electric Scooter Defendants purport to solve (albeit unlawfully) a public transportation problem which is the responsibility of the City Defendants, and the City Defendants in turn fail and refuse to enforce the law and protect the most vulnerable, disabled residents and visitors to the Cities.

46.     The Electric Scooter Defendants' obvious and deliberate exploitation of the rights of disabled persons, together with the City Defendants' deliberate indifference and failure to adopt, implement or enforce ordinances or other requirements necessary to ensure that the Pedestrian Rights of Way are kept free of the Electric Scooter obstructions have resulted in discrimination against persons with disabilities in the form of denial of access to the Pedestrian Rights of Way. As a result of this, the Pedestrian Rights of Way are not readily accessible to and usable by persons with mobility disabilities due to the pervasive and ever-growing presence of Electric Scooters that are physical access barriers along the path of travel in the Pedestrian Rights of Way.

47.     As a direct result, Named Plaintiffs and other persons with mobility impairment, visual impairment or other disabilities must choose between remaining segregated from significant daily activities, including visiting public facilities, places of public accommodation, friends and family, and thereby remaining safe, or risk injury or death by traveling on or around inaccessible Pedestrian Rights of Way. The lack of access to the Cities' systems of Pedestrian Rights of Way deprives people with mobility or visual impairments of their independence, and essentially relegates them to second-class citizens.

48.     On numerous occasions in 2018 Named Plaintiffs encountered Electric Scooters parked on and blocking Pedestrian Rights of Way or being driven on Pedestrian Rights of Way in the Cities, denying them full and equal access to the Pedestrian Rights of Way and causing them difficulty, frustration and embarrassment, and placing them in danger of injury or death. Named Plaintiffs continue to be deterred from leaving their homes, since the invasion of these Electric Scooters on the streets of the Cities.

49.     Accessibility of the Pedestrian Rights of Way goes to the heart of the purpose of the ADA and other disabilities rights law, including integration and accessibility. The Electric Scooter Defendants' exploitation of the Pedestrian Rights of Way and the City Defendants' failure to adopt, implement or enforce ordinances or other requirements necessary to ensure that the Pedestrian Rights of Way are kept free of the Electric Scooter obstructions render the Pedestrian Rights of Way not accessible to persons with mobility impairment, visual impairment or other disabilities in violation of multiple federal and state disability rights laws. This lawsuit seeks to force Defendants to, among other things, comply with these laws and provide fair and equal access to Pedestrian Rights of Way for all residents and visitors of the Cities.

50.     Plaintiffs thus bring this action to, among other things, remedy violations of Title II of the ADA, 42 U.S.C. §12131, et seq., and its accompanying regulations, the Rehabilitation Act and its accompanying regulations, as well as analogous state statutes including California Government Code §11135, California Civil Code § 54, et seq., California Government Code § 4450, California Business and Professions Code § 17200 *et seq.* and common law rights of Plaintiffs. Plaintiffs seek declaratory and injunctive relief pursuant to the above, as well as an award of attorneys' fees and costs applicable under applicable law. Plaintiffs also seek damages against the Electric Scooter Defendants.

## IV.  CLASS ACTION ALLEGATIONS

51.     Named Plaintiffs bring this action individually, and on behalf of all persons with mobility or visual impairment or other disabilities who have been denied access to Pedestrian Rights of Way in the City because of their disabilities as a class action under Rule 23 of the Federal Rule of Civil Procedure.

52.     Each member of the Proposed Class is a "qualified person with a disability" and/or a person with a "disability" pursuant to 42 U.S.C. §12131(2), Section 504 of the Rehabilitation Act, and/or applicable California law. The persons in the Proposed Class are so numerous that the joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The Proposed Class consists of tens of thousands of persons with mobility disabilities, visual impairment and other disabilities.

53.     Named Plaintiffs are informed, believe and thereon allege that the Defendants' policies and procedures violate the ADA and the Rehabilitation Act and analogous state statutes and common law with regard to Pedestrian Rights of Way and disability access.

54.     Named Plaintiffs are informed, believe, and thereon allege that Defendants have not adopted and do not enforce appropriate policies and procedures to ensure that Defendants are in compliance with these statutes to ensure nondiscrimination against persons with disabilities and equal access to programs, services and activities for persons with disabilities.

55.     The violations of the ADA, the Rehabilitation Act and related federal and California State statutes set forth in detail have injured all members of the Proposed Class and violated their rights.

56.     Defendants acted or refused to act on grounds generally applicable to the Proposed Class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole appropriate.

57.     The claims of the Named Plaintiffs are typical of those of the Proposed Class in that they arise from the same course of conduct engaged in by Defendants. The relief sought herein will benefit all class members alike.

58.     Named Plaintiffs will fairly and adequately represent the interests of the class. They have no interests adverse to the interests of other members of the class and have retained counsel who are competent and experienced in litigating complex class actions, including disability rights cases.

59.     The requirements of Rule 23 of the Federal Rules of Civil Procedure are met with regard to the Proposed Class in that:

a.     The class is so numerous that it would be impractical to bring all class members before the Court;

b.     There are questions of law and fact which are common to the class;

c.     The Named Plaintiffs' claims are typical of the claims of the class;

d.     The Named Plaintiffs will fairly and adequately represent common class interests and is represented by counsel who are experienced in class actions and the disability rights issues in this case;

e.     Defendants have acted or refused to act on grounds generally applicable to the class; and

f.     The questions or law and fact which are common to the class predominate over individual questions.

60.     The common questions of law and fact, shared by all class members, include:

a.      Whether the City Defendants are violating Title II of the ADA, 42 U.S.C. § 12131 et seq., by depriving persons with disabilities access to programs, services and activities of the Cities, and otherwise discriminating against persons with disabilities, as set forth above.

b.      Whether the City Defendants are violating Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq., by depriving persons with disabilities access to programs, services and activities of the Cities, and otherwise discriminating against persons with disabilities, as set forth above.

c.      Whether the Defendants are violating California Government Code Section 11135(a), which prohibits denial of benefits to persons with disabilities of any program or activity that is funded directly by the state or receives any financial assistance from the state.

d.      Whether the Defendants are violating California Civil Code §54 et seq., by depriving persons with disabilities to full and equal access.

e.      Whether the Defendants are violating California Government Code §4450 et seq., by depriving persons with disabilities to full and equal access.

f.      Whether the Electric Scooter Defendants unlawfully created a public nuisance causing harm to Plaintiffs.

g.      Whether the Electric Scooter Defendants unlawfully trespassed on Plaintiffs' property causing harm to Plaintiffs.

h.      Whether the Electric Scooter Defendants are violating § 17200 of the California Business and Professions Code by engaging in unfair business practices or acts causing harm to Plaintiffs.

       i.     Whether the Electric Scooter Defendants were unjustly enriched at the expense of the Plaintiffs.

61.    Plaintiffs contemplate the eventual issuance of notice to the proposed class members that would set forth the subject and nature of the instant actions. To the extent that any further notices may be required, Plaintiffs contemplate the use of additional media and/or mailings.

## V.  FIRST CAUSE OF ACTION

### The Americans with Disabilities Act – Title II

### (Against the City Defendants)

62.    Name Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

63.    Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101 (a)(2).

64.    In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. §12101(b)(1)-(2).

65.    Title II of the ADA provides in relevant part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

66.     At all times relevant to this action, each of the City Defendants was a "public entity" within the meaning of Title II of the ADA and provided and provides a program, service or activity to the general public.

67.     At all times relevant to this action, Plaintiffs were qualified individuals with disabilities within the meaning of Title II of the ADA and met the essential eligibility requirements for the receipt of the services, programs, or activities of the City. 42 U.S.C §12131.

68.     City Defendants are mandated to operate each program, service, or activity "so that, when, viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.150; see also 28 C.F.R. §§ 35.149 & 35.151. Pedestrian Rights of Way themselves constitute a vital public program, service or activity under Title II of the ADA. 28 C.F.R. § 35.104; Barden v. City of Sacramento, 292 F.3d 1073 (2002).

69.     The regulations implementing Title II of the ADA provide that a public entity must maintain the features of all facilities required to be accessible by the ADA. 28 C.F.R. § 35.133. Facilities required to be accessible include roads, walks and passageways. 28 C.F.R. § 35.104.

70.     Name Plaintiffs are informed, believe and thereon allege that the Pedestrian Rights of Way are not fully, equally and safely accessible to Plaintiffs when viewed in their entirety.

71.     Named Plaintiffs are informed, believe and thereon allege that the Electric Scooter Defendants' business model, policies and procedures rely on the unlawful parking and driving of Electric Scooters in Pedestrian Rights of Way.

72.     Named Plaintiffs are informed, believe and thereon allege that the City Defendants violated and continue to violate the ADA by failing to adopt, implement or enforce

ordinances or other requirements necessary to ensure that the Pedestrian Rights of Way are kept free of the Electric Scooter obstructions and thereby deny Plaintiffs the benefits of the Pedestrian Rights of Way.

73.     Named Plaintiffs are informed, believe and thereon allege that the City Defendants failed and continue to fail to adopt, implement or enforce ordinances or other requirements necessary to ensure that the Pedestrian Rights of Way are kept free of the Electric Scooter obstructions.

74.     Named Plaintiffs are informed, believe and thereon allege that the City Defendants and their agents and employees have and continue to violate the ADA by failing to timely respond to and remedy complaints about said barriers through their policies and practices with regard the Pedestrian Rights of Way and disability access.

75.     Named Plaintiffs are informed, believe and thereon allege that the City Defendants committed the acts and omissions alleged herein with intent and/or reckless disregard of Plaintiffs' rights.

76.     As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer humiliation, hardship and anxiety, due to Defendants' failure to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

77.     Because the City Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

78.     Pursuant to 42 U.S.C. § 12133, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action. Named Plaintiff also seeks an award of damages against the Electric Scooter Defendants.

///

## VI.  SECOND CAUSE OF ACTION

### Section 504 of the Rehabilitation Act

### (Against the City Defendants)

79.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

80.     Section 504 of the Rehabilitation Act of 1973 provides in relevant part: "[N]o otherwise qualified person with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance…" 29 U.S.C. § 794.

81.     Plaintiffs are otherwise qualified to participate in the services, programs, or activities that are provided to individuals in the Cities. See 29 U.S.C. § 794(b).

82.     The City Defendants are direct recipients of federal financial assistance sufficient to invoke the coverage of Section 504 of the Rehabilitation Act, and have received such federal assistance at all times relevant to the claims asserted in this Complaint.

83.     Named Plaintiffs are informed, believe and thereon alleges that the City Defendants and their agents and employees have and continue to violate the Rehabilitation Act and the regulations promulgated thereunder by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs based solely by reason of their disability to discrimination in the benefits and services of the Pedestrian Rights of Way and for the reasons set forth above.

84.     Named Plaintiffs are informed, believe and thereon alleges that the City Defendants committed the acts and omissions alleged herein with intent and/or reckless disregard of Plaintiffs' rights.

85.     As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer humiliation, hardship and anxiety, due to the City Defendants' failure to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

86.     Because City Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

87.     Pursuant to 29 U.S.C. § 194(a), Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action.

## VII.      THIRD CAUSE OF ACTION

### California Government Code § 4450 et seq.

### (Against the City Defendants)

78.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

79.     The Pedestrian Rights of Way are publicly funded and intended for use by the public within the meaning of California Government Code § 4450, et seq.

80.     Named Plaintiffs are informed, believe and thereon allege that the City Defendants and their agents and employees have and continue to violate California Government Code § 4450 et seq. and regulations implemented pursuant thereto by operating the Pedestrian Rights of Way in violation of disability access requirements and for the reasons set forth above. The aforementioned acts and omissions of the City Defendants constitute denial of equal access to and use of the Pedestrian Rights of Way and caused Plaintiffs to suffer deprivation of their civil rights.

81.     As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, humiliation, hardship and anxiety, due to the City Defendants' failure to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

82.     Because the City Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

83.     Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

## VIII.     FOURTH CAUSE OF ACTION

### California Government Code § 11135

### (Against All Defendants)

84.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

85.     Section 11135(a) of California Government Code provides in relevant part: "[N]o person in the State of California shall, on the basis of…disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

86.     The City Defendants are funded directly by the State of California and receive financial assistance from the State of California sufficient to invoke the coverage of Government Code Sections 11135, et seq. The City Defendants were the recipients of such funding and financial assistance at all times relevant to the claims asserted in this Complaint.

87.     Section 11150 of the California Code of Regulations defines a "program or activity" as "any project, action or procedure undertaken directly by recipients of State support or indirectly by recipients through others by contracts, *arrangements* or agreements, with respect to the public generally or with respect to any private or public entity." [Emphasis added]

88.     Section 11150 of the California Code of Regulations defines "[s]tate financial assistance" as "any grant, entitlement, loan, cooperative agreement, contract or *any other arrangement* by which a State agency provides or otherwise makes available aid to recipients in the form of… (3) real or personal property *or any interest in or use of such property*, including: (A) transfers or leases of property for *less than fair market value or for reduced consideration*…" [Emphasis added]

89.     Section 11150 of the California Code of Regulations defines "[r]ecipient" as any "person, who…receives State support…in an amount in excess of $10,000 in the aggregate per State fiscal year…by grant, contract *or otherwise, directly or through another recipient*…" [Emphasis added]

90.     The City Defendants are direct recipients of state financial assistance. The Electric Scooter Defendants are recipients of state financial assistance through another recipient, the City Defendants.

91.     Plaintiffs are informed, believe and thereon allege that Defendants and their agents and employees have and continue to violate California Government Code § 11135 by unlawfully denying Plaintiffs the benefits of, and unlawfully subjecting Plaintiffs to discrimination under the City Defendants' programs and activities and for the reasons set forth above.

92.     Defendants have refused and failed to provide Plaintiffs with full and equal access to their facilities, programs, services and activities as required by California Government Code Sections 11135, et seq. through their policies and practices with regard to the Pedestrian Rights of Way and disability access.

93.     As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer humiliation, hardship and anxiety, due to Defendants' failure to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

94.     Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

95.     Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

## IX.     FIFTH CAUSE OF ACTION

### California Civil Code § 54 et seq.

### (Against All Defendants)

96.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

97.     California Civil Code § 54(a) provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of …sidewalks, walkways… and other public places."

98.     Plaintiffs are persons with disabilities within the meaning of California Civil Code § 54(b)(1) and California Government Code § 12926.

99.     California Civil Code Section 54.3 provides that "[a]ny person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities

as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2 is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars ($1,000), and attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in Sections 54, 54.1, and 54.2."

100.    Defendants have deprived Plaintiffs of their right to have full and free use of sidewalks, walkways and other public places, and therefore violate California Civil Code § 54.

101.    For all the reasons outlined above, Defendants violated the rights of Plaintiffs under California Civil Code § 54.

102.    As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, humiliation, hardship and anxiety, due to Defendants' failure to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

103.    Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

104.    Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

105.    Name Plaintiff also seeks an award of damages against the Electric Scooter Defendants. Under California Civil Code § 54.3, the Electric Scooter Defendants are liable to Named Plaintiffs for their actual damages, and up to three (3) times their actual damages.

///

///

///

## X.  SIXTH CAUSE OF ACTION

### Public Nuisance

### (Against All Defendants)

106.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

107.    The Defendants through their policies and practices with regard to the Pedestrian Rights of Way and disability access have created a condition that is an obstruction to the free and safe use of the Pedestrian Rights of Way by persons with mobility impairment or visual impairment, so as to interfere with the comfortable enjoyment of the Pedestrian Rights of Way.

108.    The Defendants through their policies and practices with regard to the Pedestrian Rights of Way and disability access have created a condition that unlawfully obstructed the free passage or use of the Pedestrian Rights of Way, in the customary manner.

109.    The Defendants through their policies and practices with regard to the Pedestrian Rights of Way and disability access have created a condition that is a hazard because Plaintiffs risked injury and death by traveling on or around inaccessible Pedestrian Rights of Way.

110.    Named Plaintiffs are informed, believe and thereon allege that the condition referred to above affected and continues to affect a substantial number of people at the same time, and that ordinary persons are reasonably annoyed or disturbed by the condition.

111.    The seriousness of harm (including, among other things, creation of a hazardous condition causing disabled persons to risk serious injury and death) outweighs the social utility (business profits of two companies) of the Defendants' conduct.

112.    The Defendants' conduct was a substantial factor in causing the Plaintiffs' harm.

113.    Because Defendants' conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

114.    Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

115.    Named Plaintiffs also seek an award of damages against the Electric Scooter Defendants.

## XI.  SEVENTH CAUSE OF ACTION

### Trespass

### (Against All Defendants)

116.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

117.    At all times relevant to this Complaint, Plaintiffs, as residents of the Cities and visitors to the Cities, owned, occupied or controlled, or had a right to own, occupy or control, the Pedestrian Rights of Way.

118.    Defendants intentionally caused Electric Scooters to enter the Pedestrian Rights of Way, without the permission of the Plaintiffs or beyond any permission given by Plaintiffs.

119.    Defendants recklessly or negligently caused Electric Scooters to enter the Pedestrian Rights of Way, without the permission of the Plaintiffs or beyond any permission given by Plaintiffs.

120.    Plaintiffs have suffered, and continue to suffer, humiliation, hardship and anxiety, and the unauthorized entry Electric Scooters in the Pedestrian Rights of Way was a substantial factor in causing Plaintiffs' harm.

121.    Because Defendants' conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

122.    Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

123.    Named Plaintiffs also seek an award of damages against the Electric Scooter Defendants.

## XII.  EIGHTH CAUSE OF ACTION

**California Business and Professions Code § 17200 et seq.**

**(Against the Electric Scooter Defendants)**

124.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

125.    Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice.

126.    Section 17200 specifically prohibits any "***unlawful*** . . . business act or practice." [Emphasis added] Electric Scooter Defendants have violated §17200's prohibition against engaging in an unlawful act or practice by, *inter alia*, commandeering and exploiting Pedestrian Rights of Way for use by Electric Scooter Customers in violation of federal and California state laws and local ordinances.

127.    Electric Scooter Defendants' ongoing unlawful exploitation of Pedestrian Rights of Way violates, among other laws, California Government Code Section 11135 *et seq*, and California Civil Code Section 54 *et seq*., as discussed above.  Plaintiffs reserve their right to

allege other violations of law which constitute other unlawful business acts or practices, as further investigation and discovery warrants. Such conduct is ongoing and continues to this date.

128.   Section 17200 specifically prohibits any "***unfair*** . . . business act or practice." [Emphasis added] As described in the preceding paragraphs, Electric Scooter Defendants engaged in the unfair business practice of taking and exploiting Pedestrian Rights of Way for their own corporate profit to the detriment of the most vulnerable residents and visitors of the Cities, the disabled. They misappropriated something that belongs to everyone for their own corporate profit.

129.   Electric Scooter Defendants' business practices, as detailed above, are unethical, oppressive and unscrupulous, and they violate fundamental policies of this State. Further, any justifications for Electric Scooter Defendants' wrongful conduct are outweighed by the adverse effects of such conduct. Thus, Electric Scooter Defendants engaged in unfair business practices prohibited by California Business & Professions Code §17200 *et seq.*

130.   Electric Scooter Defendants' conduct caused and continues to cause substantial injury to Named Plaintiffs and other members of the Proposed Class. Named Plaintiffs have suffered injury in fact and lost money as a result of Electric Scooter Defendants' unfair conduct.

131.   Additionally, pursuant to California Business & Professions Code §17203, Named Plaintiffs seek an order requiring Electric Scooter Defendants to immediately cease such acts of unlawful, and unfair business practices.

**PRAYER FOR RELIEF**

Named Plaintiff, individually, and on behalf of the Proposed Class, prays for judgment and relief against Defendants as Follows:

A.      For an order declaring this a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Proposed Class described herein and appointing Named Plaintiff to serve as class representative and Plaintiff's counsel The Law Office of Hakimi & Shahriari as Lead Counsel for the Proposed Class;

B.      For an order enjoining the Electric Scooter Defendants from continuing to operate on Pedestrian Rights of Way;

C.      For an order requiring the City Defendants to adopt, implement or enforce ordinances or other requirements necessary to ensure that the Pedestrian Rights of Way are kept free of the Electric Scooter obstructions.

D.      For an order requiring the City Defendants to adopt, implement or enforce ordinances or other requirements necessary to ensure that the Pedestrian Rights of Way are kept free of Electric Scooter operation.

E.      For an order that this matter remain under this Court's jurisdiction until Defendants fully comply with the Orders of this Court;

F.      For an order requiring disgorgement of monies wrongfully obtained as a result of the Electric Scooter Defendants wrongful and illegal conduct;

G.      For compensatory and punitive damages against the Electric Scooter Defendants only, including actual and statutory damages, arising from Defendants' wrongful and illegal conduct;

H.      For an award of reasonable attorneys' fees and all costs and expenses incurred in the course of prosecuting this action;

I.      For pre-judgment and post-judgment interest at the legal rate; and

J.      For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  February 11, 2019          **THE LAW OFFICE OF HAKIMI & SHAHRIARI**


By:   /s/Anoush Hakimi
         Anoush Hakimi, Esq.
         Attorneys for Plaintiffs

         7080 Hollywood Blvd., Suite 804
         Los Angeles, California 90028
         Telephone: (323) 672 – 8281
         Facsimile: (213) 402 – 2170